# SOCIEDAD DE AUTORES ESPAÑOLES

*v.*

# AMERICO MARIN.

---

Equity, No. 559.

1. A Spanish corporation has the right to sue in the courts of Porto Rico.
2. Under article 13 of the treaty of peace with Spain, dramatic works copyrighted there at the time of the ratification of the treaty of Paris are protected in Porto Rico.

Opinion filed September 19, 1908.

---

*Mr. C. M. Boerman,* attorney for complainant.

*Mr. C. Coll y Cuchi,* attorney for respondent.

Sociedad de Autores Españoles v. Marin.

Rodey, Judge, delivered the following opinion:

The complainant is said to be a Spanish corporation with its headquarters in that Kingdom. That it was organized and exists for the purpose of protecting the authors and owners of Spanish copyrighted works, particularly literary, scientific, and dramatic works or compositions. It seems that it is almost wholly a society of authors, and that all of its members, who comprise practically the entire list of such authors in the Kingdom of Spain, assign their copyrights to it, as soon as they are obtained, and the corporation thereafter, through its agents, collects all royalties due such authors or owners, and pays the same to them or their heirs, less reasonable charges, as may be proper, and protects the copyright all over the world, wherever it exists.

The pleadings are very informal, consisting only of a short bill of complaint and an amendment thereto, and a petition for an injunction and an amendment thereto. These amendments dismiss as to all respondents except the one mentioned in the caption. An order to show cause was issued and returned, but, at the hearing, both counsel agreed that the cause should be submitted on the merits without any answer or additional formal pleadings or any proofs, and on an understood statement of facts, all considered as admitted, as set forth in this opinion.

The respondent is an actor and the head of a company of actors known as, "La Compañia Zarzuela Española." He came and brought his company to Porto Rico recently from Spain, and his company is now playing in all of the theaters of the island, and is acting different Spanish plays at said theaters nightly, without paying any royalty to complainant therefor, but refusing so to do, all of which plays are alleged to be the

IV. Porto Rico—19.

property of the complainant. The plays or dramatic pieces or compositions are said to consist of operas, dramas, tragedies, musical and other comedies, vaudeville sketches, etc., and the ones upon which the copyright is being infringed are enumerated as, La Marina, El Milagro Virgen, Un Estudiante de Salamanca, El Anillo de Hierro, Jugar con Fuego, and others, the names of which are not given. An injunction against this alleged violation of the complainant's rights is prayed.

The respondent, after being served with an order to show cause, appeared by counsel and admitted that complainant is a Spanish corporation, organized and existing under the laws of Spain, as claimed, and that it is, in Spain, the owner of the Spanish copyright of the enumerated works and compositions, but denies that the complainant has any right to sue at all in Porto Rico, or that it has any copyright in the island on the works or plays in question, for the reason that said dramatic works, plays, etc., were never recorded in the public registry of Porto Rico, as it is claimed should have been done under the law.

The complainant admits that it has never caused any of the dramatic works or plays in question to be recorded in Porto Rico, but insists that its registry of the same at headquarters in Spain, and its ownership of the same there, gave it a copyright thereon in Porto Rico, which was in existence at the date of the treaty of Paris, on the 11th day of April, 1899, and that, under the terms of that treaty, it is now the owner of copyrights thereon in Porto Rico.

As to the right of the complainant to sue, the court ruled with the complainant, holding that any foreign corporation has a right to sue in the courts of Porto Rico, and especially this corporation, if it has any rights under the treaty.

Sociedad de Autores Españoles v. Marin.

The language of the portion of art. 13 of the treaty of Paris that is applicable is: "The rights of property secured by copyrights and patents acquired by Spaniards in the island of Cuba, and in Porto Rico, the Philippines, and other ceded territories, at the time of the exchange of the ratifications of this treaty, shall continue to be respected." [30 Stat. at L. 1760.]

After this holding by the court as to the right to sue, it was admitted by counsel for both parties that the only question to be decided is whether or not, under that clause of the treaty, the complainant, as to the works in question, has a copyright in Porto Rico at the present time, in view of the fact that it never caused the same to be recorded in the registry of the island.

Of course, under clause 2 of art. 6 of the Constitution of the United States, treaties are the supreme law of the land, and the courts in every state are bound thereby. We find that the present copyright law of Spain was enacted on the 10th of January, 1879. 9 Alcubilla, Diccionario de Administración, p. 39. And that, by art. 56 thereof, it was put in force in the island of Porto Rico three months after its date, and that, on the 3d of September, 1880, an elaborate set of regulations were enacted for its enforcement. Ibid. pp. 43 et seq. And that, in addition, on the 5th of May, 1887, these regulations were also extended to Porto Rico. Ibid. p. 55.

We are somewhat troubled, after an examination of this Spanish copyright law, because we find that it gives a copyright to an author for his entire lifetime, and to his heirs for eighty years thereafter, provided a new edition or copy of the work is published as often as once in twenty years; otherwise it becomes public property.

We find that our own copyright law, 2 Fed. Stat. Anno. 260,

Sociedad de Autores Españoles v. Marin.

has life for only twenty-eight years to the author, and fourteen years to his family; and we wonder whether the language of the treaty, above quoted, is intended to give this much longer term to Spanish copyrights in Porto Rico.

This doubt is increased by the remaining portion of art. 13 of the treaty, not quoted above, which is as follows: "Spanish scientific, literary, and artistic works, not subversive of public order in the territories in question, shall continue to be admitted free of duty into such territories, for the period of ten years, to be reckoned from the date of the exchange of the ratifications of this treaty."

We are satisfied, from an examination of the elaborate Spanish copyright law referred to, as well as of the regulations regarding the same, that, although there was established a local copyright registry in Porto Rico and in other provinces of Spain, even in those that were not ultramarine, still, such registries were intended only as a convenience for the provincial residents, and that the real title to copyrights in that country is the national registry at Madrid.

Therefore we feel bound to hold that any copyright duly secured at headquarters, in Spain, and existing at the date of the treaty, was also in force in Porto Rico; and it being admitted that the copyrights in question were, at such time, the property of the complainant, and duly registered at headquarters, the same now exist in Porto Rico. Therefore, the respondent, having admitted that he is using such dramatic works, musical and other compositions, etc., is guilty of a violation and infringement of such copyright, and should be enjoined from so doing unless he shall pay the royalties due therefor, as requested, and it is so ordered.

Sociedad de Autores Españoles v. Marin.

This decision may be of such far-reaching importance as that we feel, in justice to our government, a copy of the same should be certified by the clerk to the Honorable the Attorney General of the United States, so that, if he shall deem proper, he may cause the United States attorney for the island to take an appeal to the Supreme Court of the United States.